IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3122-FL

| | |
|---|---|
| SAMUEL ELLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ROBERT LEWIS, DR. PAULA SMITH, ) | |
| YVONNE LOCKLEAR, DR. RON ) | |
| BELL, and TERI CATLETT, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on defendant Dr. Ron Bell's ("Bell") motion to dismiss (DE 91) pursuant to Federal Rule of Civil Procedure 12(b)(6), which was fully briefed. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants in part and denies in part Bell's motion to dismiss.

**STATEMENT OF THE CASE**

On June 4, 2012, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against defendant Bell, Robert Lewis ("Lewis"), Dr. Paula Smith ("P. Smith"), Yvonne Locklear ("Locklear"), as well as previously-named defendants Glenn Williams ("Williams"), Hope Smith ("H. Smith"), Steve Bissell ("Bissell"), Bonnie Strickland ("Strickland"), and Sharon Kristoff ("Kristoff").[1] Plaintiff alleged that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

---

[1] As set forth herein, these previously-named defendants subsequently were voluntarily dismissed, and the court constructively amends the caption of this order to reflect dismissal of these defendants.

Plaintiff sought declaratory and injunctive relief as well as compensatory and punitive damages. On October 30, 2012, the court conducted a frivolity review of plaintiff's action pursuant to 28 U.S.C. § 1915(e)(2)(B), and allowed plaintiff to proceed.

The court subsequently entered an order directing North Carolina Prisoner Legal Services ("NCPLS") to investigate plaintiff's claims to determine whether appointment of counsel was warranted. On April 1, 2013, NCPLS responded to the court's order of investigation, and informed the court that it would provide plaintiff representation in this action. Plaintiff subsequently voluntarily dismissed defendants Kristoff, Williams, Bissell, H. Smith, and Strickland from this action without prejudice.

On October 14, 2013, plaintiff filed a motion for leave to file an amended complaint, along with a proposed amended complaint. On November 21, 2013, the court entered an order granting plaintiff's motion to amend, and finding that plaintiff could proceed with his action against defendants Lewis, P. Smith, Locklear, Bell, and newly named defendant Teri Catlett ("Catlett"). Plaintiff filed his amended complaint on November 26, 2013.

On January 6, 2014, Bell filed his motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim and that plaintiff's action should, in part, be dismissed as time barred. The motion was fully briefed.

**STATEMENT OF FACTS**

Viewing the facts in the light most favorable to plaintiff, the allegations in the complaint may be summarized as follows. Plaintiff, over a period of almost seven years, has endured debilitating pain as the result of an alleged botched gall bladder surgery which was performed while he was in the North Carolina Department of Public Safety's ("DPAC") custody. (Am. Compl. ¶ 3.) In the

2

course of the surgery, plaintiff's hepatic artery and bile duct were injured causing plaintiff to have to undergo an emergency procedure to repair the damage. (Id.) As a result of the injuries he received during his gall bladder surgery, plaintiff suffers severe debilitating pain, abdominal cramping, nausea, vomiting, severe headaches, and severe uncontrolled acid reflux. (Id. ¶ 14.) Plaintiff required two additional surgeries in the following years. (Id. ¶ 3) In total, plaintiff has undergone four surgeries between 2006 and the filing of his amended complaint. (Id.)

Defendant Bell is a primary care provider at Lumberton Correctional Institution ("Lumberton"). (Id. ¶ 37.) Plaintiff was housed at Lumberton from April 2009 through July 2011. (Id.) Plaintiff arrived at Lumberton on April 14, 2009, and expressed constant complaints to defendant Bell about pain and discomfort. (Id. ¶¶ 223, 231.) Bell, in response, would often make light of plaintiff's pain and suffering or get angry at the plaintiff when plaintiff would complain about his condition. (Id. ¶ 232.) On June 9, 2009, plaintiff wrote a letter to defendant Dr. P. Smith explaining his situation and requesting assistance. (Id. ¶ 228.)

On December 21, 2009, after eight months of constant complaints about pain and discomfort, defendant Bell placed a Utilization Review ("UR") request to have plaintiff scheduled to see a surgeon. (Id. ¶ 231.) It then took more than five months for plaintiff to be taken to see the surgeon. (Id. ¶ 233.) During this time, plaintiff was suffering from multiple incarcerated hernias. (Id. ¶ 234.) An incarcerated hernia occurs where a loop of intestine becomes trapped in the weak point of the abdominal wall, obstructing the bowel, leading to severe pain, nausea, vomiting and may cause a lack of blood flow to part of the intestine which can lead to death. (Id. ¶ 235.) The UR management policy considers an incarcerated hernia to be a medical emergency and states that an incarcerated hernia indicates that surgery should occur within a few hours. (Id. ¶¶ 237-238.)

3

Plaintiff was transferred from Lumberton to Harnett Correctional Institution in July 2011. (Id. ¶ 17(g), (h).) Plaintiff did not receive his hernia surgery until February 14, 2012. (Id. ¶ 239.) Plaintiff states that defendants Locklear and Bell were responsible for plaintiff's delay in receiving surgery because they did not provide the UR board with necessary information to gain approval of the treatment, did not appropriately respond to "pended" or denied UR requests, and did not appeal UR decisions that denied plaintiff care. (Id. ¶ 240.) During the year that plaintiff awaited his hernia surgery, he suffered in severe pain without being provided adequate medical treatment. (Id. ¶ 244.)

## DISCUSSION

A.      Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

B.  Analysis

   1.  Failure to State a Claim

      a.  Eighth Amendment Claim Against Bell

Defendant Bell raises the defense of qualified immunity in response to plaintiff's allegations that Bell acted with deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). The Supreme Court has explained that the first prong is an objective one—the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious"—and the second prong is subjective—the prisoner must show that " subjectively the officials act[ed] with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (internal quotations omitted).

Bell's motion to dismiss focuses on the subjective prong of the Eighth Amendment test–whether Bell acted with deliberate indifference. Deliberate indifference "sets a particularly

5

high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Here, plaintiff asserts that Bell ignored plaintiff's repeated complaints of pain and delayed providing plaintiff treatment for a life threatening condition, which resulted in severe pain. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Abraham v. McDonald, 493 F. App'x 465, 466 (4th Cir. 2012) (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)); Webb v. Hamidullah, 281 F. App'x. 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs [ ] if the delay results in some substantial harm to the patient."). Plaintiff's assertion in this case that Bell's eight month delay in providing medical care, which caused plaintiff severe pain, states an Eighth Amendment claim. Thus, Bell's motion to dismiss this claim is DENIED. The court further finds

6

that the issue of qualified immunity cannot be resolved on this record, but that it may be raised in a subsequent motion.

        b.      Supervisor Liability

The court now considers whether plaintiff states a supervisor liability claim against Bell. Supervisors in a § 1983 action may not be held liable based upon a theory of *respondeat superior*. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). Instead, "liability ultimately is determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.' " Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)). To establish supervisor liability under § 1983, a plaintiff must establish:

> (1)    that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2)    that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
>
> (3)    that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799.

Bell argues that plaintiff's supervisor liability claim fails because plaintiff did not identify a subordinate of Bell. The complaint, however, asserts that Bell, a primary care physician, failed to adequately supervise defendant Locklear, a nurse. Specifically, plaintiff alleges that Bell failed to ensure that Locklear requested the appropriate medications, provided the UR review board with

7

necessary information, or responded to denied UR requests. Based upon these allegations, the court finds that plaintiff has sufficiently alleged a supervisor liability claim against Bell. See Shaw, 13 F.3d at 799.

        c.        Official Capacity Claim

Plaintiff's claims for money damages against Bell, in Bell's official capacity, is a claim against the State of North Carolina. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (declaring that suit against state official in his official capacity is suit against the state itself). As such, these claims are barred by Eleventh Amendment immunity. Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). Thus, to the extent plaintiff request monetary damages against plaintiff in plaintiff's official capacity, such claim is DISMISSED.[2]

State officials acting in their official capacities, however, can be sued for prospective injunctive relief to comply with the federal Constitution. See Ex parte Young, 209 U.S. 123 (1908); McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) ("[Ex parte Young,] [] permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such suit is not a suit against the state for purposes of the Eleventh Amendment.") (citation omitted). "More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; []thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

---

[2] The court notes that it is not entirely clear from plaintiff's complaint whether plaintiff seeks monetary damages for his official capacity claim against Bell. In an abundance of caution, the court addresses and dismisses such claim.

Here, plaintiff alleges Bell participated in a custom of repeated delays in providing medical care. These allegations are sufficient to state an official capacity claim for injunctive relief. See id. Thus, the court DENIES Bell's motion to dismiss plaintiff's official capacity claim for injunctive relief against Bell.

2. Statute of Limitations

Defendant Bell argues that plaintiff's Eighth Amendment claim should be dismissed pursuant to the statute of limitations to the extent that plaintiff's action arose from events that occurred prior to June 4, 2009, which was three years prior to the date plaintiff filed his complaint on June 4, 2012. Although the limitations period for claims brought under section 1983 is borrowed from state law, the time for accrual of an action is a question of federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). Generally, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Wallace, 549 U.S. at 391. When harm results from a series of acts or omissions, the continuing violation doctrine applies. See Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001); see also, Brown v. Eagleton, No. 8:13-cv-674DCN, 2013 WL 6157984, at *5 (D.S.C. Nov. 21, 2013) ("Courts have applied the continuing violation doctrine to deliberate indifference claims.") (citation omitted); Green v. Rubenstein, 644 F. Supp. 2d 723, 747 (S.D.W. Va. 2009) ("When harm results from a series of acts or omissions, Courts have found that the continuing violation doctrine applies."). A continuing violation is a "continuous series of events [that] gives rise to a cumulative injury." Heard, 253 F.3d at 320. It occurs when "it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct." Id. at 319. "Deliberate indifference to a serious medical need manifested in delay in the provision of medical

9

treatment is a continuing violation which commences when the provider of the medical services has notice of the untreated condition and ends when treatment is provided." Green, 644 F. Supp. 2d at 747 (citing Heard, 253 F.3d at 318)

In this case, plaintiff alleges that on December 21, 2009, after approximately eight months of complaints about pain and discomfort, defendant Bell made a UR request to have plaintiff scheduled for surgery. (Am. Compl. ¶ 231.) Plaintiff, however, did not receive hernia surgery until February 14, 2012. (Id. ¶ 239.) Based upon the foregoing, the three-year limitations period began to run on February 14, 2012, the last date defendants allegedly acted with deliberate indifference to plaintiff's series medical needs. Thus, plaintiff's original complaint filed on June 4, 2012, is timely.

The court now turns to Bell's contention that the portion of plaintiff's supervisory liability claim against Bell, which arose prior to November 26, 2010, is time-barred. Bell essentially argues that because plaintiff raised his supervisor liability claim for the first time in his November 26, 2013, amended complaint, any supervisor liability claim arising prior to November 26, 2010, does not relate back to the original complaint and is time-barred.

For an amended claim to relate back to the date of the original complaint under Rule 15(c), "the amendment [must] assert [ ] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); Mayle v. Felix, 545 U.S. 644, 659 (2005) (stating that a claim arises out of the same "conduct, transaction, or occurrence" if there exists "a common 'core of operative facts' uniting the original and newly asserted claims.") Here, plaintiff's supervisor liability claim against Bell arose out of the same conduct as plaintiff's Eighth Amendment claim against Bell individually. Namely, both claims allege the Bell acted with deliberate indifference to plaintiff's serious medical needs and

10

appear to be only slight variations of the same claim. Accordingly, plaintiff's supervisor liability claim is treated, for statute of limitations purposes, as though it were brought on June 4, 2012, the date the original complaint was filed.

## CONCLUSION

Based upon the foregoing, Bell's motion to dismiss (DE 91) is GRANTED in part and DENIED in part. Bell's motion is GRANTED as to plaintiff's official capacity claim for which plaintiff seeks monetary damages. The remainder of Bell's motion to dismiss is DENIED. The Clerk of Court is DIRECTED to issue a case management order as to this defendant.

SO ORDERED, this the 3rd day of September, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge